IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2005 FEB 23 A 10: 26

ZELKJO ANIC
BOLERO LLC
20 Blaine Street
Manchester, New Hampshire 03102

CASE NO. 1:05-CV-63 M

JUDGE McCAULIFFE

05 114 L

v.

ROBERT LAFONTAINE
122 Day Street
Manchester, New Hampshire 03104

AND

TOWER REALTY GROUP
1000 Elm Street
Manchester, New Hampshire 03101

MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF w/proposed order

NOW COMES the Plaintiff/Petitioner in the above matter, Zelkjo Anic/Bolero, LLC, at this point filing *pro se* to reduce legal costs, and pursuant to 28 U.S.C. 1331, 42 U.S.C. 1981 and Federal Rules of Civil Procedure 65, to posit this Motion for Injunctive Relief, as the entry of preliminary and permanent injunctive relief and the award of damages following notice and hearing as he has **DIRECT EVIDENCE** of unlawful discrimination.

## I. THE PARTIES and BACKGROUND FACTS

1. Plaintiff is the Bosnian-born Lessee of a Commercial Lease seen at **Complaint Appendix 1.** He quit his engineering job earning $50,000.00 per year to redo the empty warehouse, adding three (3) bathrooms, full kitchen, full bar and other improvements, with the full and express knowledge and permission of Lessor, who witnessed it. He operates the facility under Bolero, LLC and maintains control as Chief Member of Bolero, LLC.

2. Defendant Bob Lafontaine ("Defendant Lafontaine") is, based on information and belief, the owner of the subject property and Lessor.

CERTIFIED TO BE A TRUE COPY
JAMES R. STARR, CLERK
BY: Judith Barrett
DEPUTY CLERK 3-11-05

(3)

3. Defendant Tower Realty Group is the management company that may or may not be an agent of Defendant Lafontaine.

4. Plaintiff has at no time been in material breach of any Lease term or condition, and is not currently late on any payments for utilities or rent.

5. Defendants have continually disturbed Plaintiff's Right to Quiet Enjoyment of his premises, and have otherwise materially violated the Contract, by actions including, but not limited to:

6. Falsely accusing Plaintiff of a number of items including violence, destruction of property, and other false claims, none of which has been proven and none of which implicates fault or responsibility of Plaintiff. In the two years that Bolero has been operating there was a stabbing on Elm Street that had nothing to do with Bolero whatsoever, there was some trash in the parking lot so a parking lot monitor system was set up and one (would-be) customer who was turned away backed his car into a neighboring shop front. **Complaint Appendix 2.**

7. In fact, general counsel for Plaintiff, attempting to expeditiously address this matter without wasting legal or monetary resources, noted the blatant falsity of the allegations in a specifically itemized letter to Defendant Tower Realty attached hereto as **Complaint Appendix 3**.

8. Defendants have yet to issue any substantive response to such itemized rebuttal and Plaintiff plans to call Manchester Police as witnesses to the integrity and peaceful nature of Bolero's clientele. To Plaintiff's knowledge there has never been a police call to Bolero, a rare fact for a Manchester club.

9. Plaintiff and counsel have issued dozens of telephone calls to Defendants regarding the issue and Defendants failed to return any of these calls, said calls which will be specifically identified via wireless telephone logs.

10. Rather than telephone or otherwise contacting Plaintiff, Defendants harassed him yet again by sending a letter dated 16 November, three (3) weeks later, alleging unidentified "far more issues outstanding besides rent" and demanding the electric bill of $403.14, as seen at **Complaint Appendix 4**. Plaintiff has paid that amount in full, as noted at **Complaint Appendix 5.**

11. For exactly one (1) time in this two (2) year contract, Plaintiff canceled a check for rent, owing to a pressing personal matter, making good on it within the next calendar week, with a late fee, as noted in the United State Postal Money Order *vis a vis* Defendant's letter of 18 November, 2004, as seen at **Complaint Appendix 6.**

12. **Curiously, all of Plaintiffs problems started during the late summer of 2004 after he heard Defendant Lafontaine tell him at Lafontaine's office: "I don't like Blacks."**[1]

**13. Shortly after that, and well prior to 15 October, 2004, Plaintiff and his associates at Family Affairs Records began posting fliers for Hip-Hop, Reggae and R & B music – traditionally Black-inspired and attended musical genres. See sample fliers Complaint Appendix 7.**

14. On 15 October, 2004, as if on cue, Defendant Tower Realty (by and through one Scott Forrester who signed as agent of Defendant Lafontaine) delivered a Notice to Quit seen at **Complaint Appendix 8(a).** None of the charges alleged in it had any substantial basis in fact, and the matter was basically dropped until 9 December, 2004.

---

[1] Subsequently Defendant Lafontaine would tell Plaintiff that he wanted to use part of his dance floor and pool table room as a VIP lounge for a gentleman's club that would be based next door. Plaintiff asserts that Defendant Lafontaine can have that dance floor, pool table area and whatever else he wants just as soon as Plaintiff is done exercising his right to extend his Lease by one year, to terminate 31 December, 2006.

15. On 9 December, 2004 Defendant issued a letter that counsel for Plaintiff would later call fraudulent because it stated that he or Bolero were "no longer a tenant in the building," despite the fact that no legal proceeding had ever been followed through on pursuant to Chapter 540. **Complaint Appendix 8(b).**

**16.** At that point Plaintiff issued the letter dated 15 December, 2004 and filed for injunctive relief in state court. **Complaint Appendix 9.**

17. At the hearing on 23 December, 2004, the Court denied the sought relief because Bob Lafontaine was not named as Defendant. Plaintiff informed Defendant that he would be seeking tortuous interference claims against Tower Realty Group, causing counsel for Tower Realty Group to issue a profanity in the direction of general counsel for Plaintiff, who immediately documented it as well as the fraudulent statement referenced in para. 15, *supra*. **Complaint Appendix 10**.

18. On or about 3 February Defendant Lafontaine caused a copy of a Notice to Quit to be sent to the law office of Crnilovic-Phillips, this time with the *caveat* that a Sheriff was actually supposed to serve it. **Complaint Appendix 11.**

19. Next, at **Complaint Appendix 12,** are four unanswered letters dated 3 January, 8 February, 12 February and 18 February from general counsel to Defendant Lafontaine, advising him of the historical importance of Bolero, as well as the likelihood of pursuing this Action.

## II. GROUNDS AND NEED FOR EQUITABLE AND OTHER RELIEF

### A. REQUEST FOR LIMITED, TEMPORARY EX PARTE RELIEF WITH RESPECT TO BASELESS DEMANDS FOR VACATION OF PREMISES AND ORDER FOR DAMAGES ON SAME

20. The contract between the parties grants Defendants the right to collect interest for late rents. Defendants cannot show where Plaintiff has not paid such amounts for any late rents, yet and still they harass him with letters demanding that he vacate the premises, such threats violating his right to quiet enjoyment and to support his family. Defendants must cease and desist such baseless demands, forthwith. Further, Defendants have alleged that Plaintiff owes them funds for events that are legally not his responsibility, such as fights that occurred a mile away, on Elm Street, as noted at **Complaint Appendix 3**, *supra*.

### B. GENERAL STANDARDS FOR INJUNCTIVE AND OTHER RELIEF

21. 42 U.S.C. 1981 provides for nongovernmental and governmental discrimination and read, in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

22. An injunction will issue if there is an immediate danger of irreparable harm to the party seeking the injunctive relief, there is no adequate remedy at law and the party seeking the injunction has demonstrated the likelihood that it will succeed on the merits of its claims. UniFirst Corp. v. City of Nashua, 130 N.H. 11 (1987).

23. **<u>Plaintiff has a clear likelihood of success on the merits of the claims asserted in this matter</u>.**

In the case at bar, Defendants are attempting to shut Plaintiff down in substantial part because he has a healthy Wednesday night crowd that is 80 per cent Black, listening to predominately Black music. As such, he is vested with a derivative right to forward this complaint and of course should the Court determine otherwise he will simply join another representative Plaintiff. Further, Defendants Lafontaine and Tower Realty have demonstrated only that they intend to endlessly harass Plaintiff and act in a manner consistent with anticipatory breach and tortuous interference, respectively. Plaintiff has the clear right to be free from interference from a Landlord who "doesn't like Blacks" and his agents. It is DIRECT EVIDENCE of racial discrimination, and short of "keep those niggers out of here," there is no more offensive comment that Defendant Lafontaine could have issued.

24. **<u>As a result of defendants' actions, Plaintiff has suffered and continues to suffer immediate and irreparable injury for which there is no adequate remedy at law</u>.**

In particular, each and every day Plaintiff Anic awakes he must wonder whether or not his possessions will be wrongfully set out or whether he will need to pay his attorneys for advice. Such burden is reprehensible and does not permit him to conduct his affairs, thereby substantially denying him quality of life, and the benefit of the bargain he initiated more than two (2) years ago.

25. **<u>The burden imposed upon defendants by the limited *ex parte* temporary relief is minimal.</u>**

Defendant must simply abide by the terms of the Lease as drawn between the parties, rather than grasping at straws to try to evict. This is merely preservation of the status quo until Defendants can actually show the Court some sort of material breach, which they cannot do. To this point the Defendants have issued statements about the sale of liquor on the premises, yet the Lease specifically contemplates a restaurant and related services, and Defendant Lafontaine has been aware of the fact that Mr. Anic constructed a full-service bar, and in fact Defendant Lafontaine directly benefits from the presence of such bar, in this Lease and as a permanent fixture. Plaintiff requests minimal or token bond amount, if any need be levied.

26. **<u>The benefit to the common good is substantial:</u>**

It is a beautiful thing to have the only Yugoslavian/Bosnian club in Southern New Hampshire hosting non-violent Hip-Hop/Soul and Reggae music evenings. That sort of unity embodies the true spirit of American Values, and Plaintiff therefore looks to this Honorable Court for refuge from a less than honorable landlord.

27. Plaintiff also is entitled to the recovery of all costs and attorneys' fees per code.

## III. CAUSES OF ACTION

### A. 42 U.S.C. 1981

29. The circumstantial and direct evidence of racial animus in this context provides Plaintiff with derivative rights to file and to maintain a 42 U.S.C. 1981 Complaint against both Defendants.

### B. BREACH OF CONTRACT/NON-COMPLIANCE and LOSS OF RIGHT TO QUIET ENJOYMENT OF PREMISES.

30. The instrument that governs the operation and conduct of the Parties constitute an agreement and contract between the Parties that demand that they each abide by and comply with the provisions of said instrument.

31. Defendant Lafontaine is obliged, and agreed to abide by the Instrument and all other lawful rules and regulations of R.S.A. 540 and any and all other applicable law at equity, and/or common law.

32. Defendant breached its obligations under the contract by repeatedly demanding vacation without just grounds.

33. As a result, Plaintiff has been denied the benefit of the bargain and his right to quiet enjoyment of the premises.

### C. TORTOUS INTERFERENCE

34. Defendant Tower Realty Group successfully argued at the stateside TRO hearing that Defendant Lafontaine was not named in that Action and that they were not a proper party to it. Having seen Appendix 8, however, with Scott Forrester's signature as "Agent" of Landlord, Plaintiff posits that Tower Realty Group may indeed be sued directly for breach of contract, but if not, then Tower Realty Group may certainly be sued for Tortous interference in the alternative as they cannot have it both ways.

## IV. DAMAGES AND DEMANDS

35. As a direct and proximate result of said breaches, plaintiff has suffered and continues to suffer the harm and damages described herein, including but not limited to, the inability reasonably conduct his affairs, and legal fees and costs incurred by plaintiff in attempting to ensure Defendant's compliance with said provisions, all within the minimum and maximum jurisdictional limits of this Court.

36. Plaintiff is entitled to monetary damages and injunctive relief as contemplated by Law.

37. That defendants be ordered to compensate plaintiff for all monetary damages caused by defendants' actions, including but not limited to, each and every letter written by general counsel.

38. That defendants be ordered to pay plaintiff's attorneys' fees and costs as allowed by Law.

39. That this Court grant such other and further relief as is just or necessary.

Respectfully submitted,

Dated: 22 February 2005

By Zelko Anic
Zelkjo Anic
20 Blaine Street
Manchester, NH 03101

VERIFICATION

I, owner of Bolero. hereby certify that I have read the foregoing petition, and the facts set forth therein are true and accurate to the best of my knowledge and belief.

Dated:

Zelko Anic
Zelkjo Anic NH DL #12ACZ61221

STATE OF NEW HAMPSHIRE
HILLSBOROUGH, SS

Personally appeared before me the above named Zelkjo Anic, and gave oath that he is the duly authorized chief Member of Bolero, LLC, is authorized to sign this petition on behalf of Bolero, LLC, and that the foregoing factual allegations are true and accurate to the best of his knowledge and belief.

Dated: 2/22/05

CARISSA SIERRA
Notary Public - State of Florida
MyCommissionExpiresJan27,2008
Commission # DD 285573
Bonded By National Notary Assn.

Carissa Sierra
Notary Public

My commission expires: 1/27/08

**THE STATE OF NEW HAMPSHIRE**

ZELKJO ANIC
BOLERO, LLC.,

CASE NO. 1:05-CV-63 M

PLAINTIFF,

JUDGE McAULIFFE

V.

ROBERT LAFONTAINE
AND
TOWER REALTY GROUP,

DEFENDANTS.

**ORDER GRANTING INJUNCTIVE RELIEF**

UPON CONSIDERATION of the facts and circumstances presented by the verified Complaint of plaintiff, it is hereby found, ordered and adjudged that:

1. Defendants have engaged, and are currently engaged, in activity associated with unlawfully attempting to evict Plaintiff for reasons that involve race, which will irreparably injure the ability of the Plaintiff to maintain his livelihood and to promote unity between the races. Further, no remedy at law will provide the Plaintiff with the relief necessary to ensure compliance with 42 U.S.C. 1981. Accordingly, Plaintiff is entitled to the limited relief it requests. Given the narrow scope of the injunction relief contained herein, the burden of the imposition of such relief on defendants is minimal, particularly when weighed against the substantial danger presented by defendants' activities, and the substantial benefit afforded community by ensuring compliance with the Statutes regarding unlawful race discrimination.

2. Defendants are hereby ordered to immediately cease and desist any and all attempts at eviction pending further review by this Court.

3. This Order is entered on February ____, 2005, at ________ a.m./p.m.

Appendix A

4. Given the limited scope of this injunction, no harm can arise therefrom, and no injunctive bond from plaintiff is therefore required.

5. This Temporary Restraining Order shall remain in effect until further hearing scheduled for this matter on ________________, 2005.

IT IS SO ORDERED.

Dated:

______________________________
District Court Judge McAuliffe